# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| Sonia Torres, individually and as representative of a Class of Participants and Beneficiaries on Behalf of the Greystar 401(k) Plan; <br><br> Plaintiffs, <br><br><br> v. <br><br> Greystar Management Services, L.P.; <br><br> Defendant. | Case No. 5:19-cv-00510 <br><br><br><br> CLASS ACTION COMPLAINT FOR CLAIMS UNDER 29 U.S.C. § 1132(a)(2) <br><br><br><br> JURY TRIAL DEMANDED |

NOW COME Plaintiff Sonia Torres, individually and as representative of a Class of Participants and Beneficiaries on Behalf of the Greystar 401(k) Plan ("Plaintiff"), and asserts to the best of their knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

1.    The duties of loyalty and prudence are "the highest known to the law" and require fiduciaries to keep "an eye single to the interests of the [ERISA] participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271-72 n.8 (2nd Cir. 1928).  This duty is incorporated as a matter of law into ERISA through 29 U.S.C. § 1002(21)(A), which provides that an entity is an ERISA fiduciary "with respect to a plan to the extent that [it] exercises any discretionary authority or discretionary control

respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."

2.    Defendant Greystar Management Services, L.P., is an ERISA fiduciary as it exercises discretionary authority or discretionary control over the 401(k) defined contribution pension plan – known as the Greystar 401(k) Plan (the "Plan") – that it sponsors and provides to its employees.  *For every year between 2013 and 2017 (financial information for 2018 is not yet available), the administrative fees charged to Plan participants for is greater than 90 percent of its comparator fees when fees are calculated as cost per participant. And for every year between 2013 and 2017 but one (financial information for 2018 is not yet available), the administrative fees charged to Plan participants is greater than 90 percent of its comparator fees when fees are calculated as a percent of total assets.*

3.    Those excessive fees cannot be justified. The high fees, occurring over years, represent something more than a sloppy business practice; they are a breach of the fiduciary duties owed by Greystar to Plan participants and beneficiaries.  Prudent fiduciaries of 401(k) plans continuously monitor administrative fees against applicable benchmarks and peer groups to identify excessive and unjustifiable fees. To remedy, Plaintiff brings this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) to enforce Greystar's liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from Greystar's breaches of fiduciary duty.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

5.      Venue is appropriate in this district because Greystar resides or may be found in this judicial district within the meaning of 29 U.S.C. § 1132(e)(2).

6.      In conformity with 29 U.S.C. § 1132(h), Plaintiff has served the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7.      Plaintiff Sonia Torres lives in San Antonio, Texas and, during the Class period, was a participant in the Plan under 29 U.S.C. § 1002(7).

8.      The named Plaintiff and all participants in the Plan suffered financial harm as a result of the imprudent or excessive fee options in the Plan because Greystar's inclusion of those options deprived participants of the opportunity to grow their retirement savings by investing in prudent options with reasonable fees, which would have been available in the Plan if Greystar had satisfied its fiduciary obligations. All participants continue to be harmed by the ongoing inclusion of these investment options.

9.      Greystar Management Services, L.P. ("Greystar") is a private company with its principal headquarters located at 600 East Colinas Boulevard, Irving, Texas. Greystar is a citizen of the state of Texas. Greystar is a private subsidiary whose ultimate parent is Greystar Real Estate Partners, LLC. In this Complaint, "Greystar" refers to the named defendant and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain. Greystar is the Plan sponsor of the Greystar 401(k) Plan.

3

10.     Greystar is a fiduciary with ultimate responsibility for the control, management, and administration of the Plan in accord with 29 U.S.C. § 1102(a). In combination, Greystar has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly carry out such responsibilities.

11.     The Plan is a "defined contribution" pension plan, meaning that Greystar's contribution to the payment of Plan costs is guaranteed but the pension benefits are not.  Greystar contributes 28% of the costs; participants contribute the remainder. Of all of the eligible Plan participants, 38% are retired; 2% are eligible without a 401(k) balance; and 60% are active with a 401(k) balance. There are two services providers that provide recordkeeping and information (among other things) to the Plan: Merrill Lynch and Ascensus.

12.     The Plan is a defined contribution, individual account employee pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34). The Plan is established and maintained under a written document in accord with 29 U.S.C. § 1102(a)(1). The Plan provides for retirement income for eligible Greystar employees and their beneficiaries.

### ERISA's FIDUCIARY STANDARDS

13.     ERISA imposes strict fiduciary standards of duty and loyalty and prudence on Greystar as a fiduciary to the Plan. 29 U.S.C. § 1104(a)(1) provides in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
> (A) for the exclusive purpose of:

4

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan; [and]

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

14.     With certain exceptions not relevant here, 29 U.S.C. § 1103(c)(1) provides in relevant part:

the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

15.     29 U.S.C. § 1109 provides in relevant part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

16.     Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and for the exclusive benefit of participants in the plan, and not for the benefit of third parties including service providers to the plan such as recordkeepers and those who provide investment products. Fiduciaries must ensure that the amount of fees paid to those service providers is no more than reasonable. DOL Adv. Op. 97-15A; DOL Adv. Op. 97-16A; *see also* 29 U.S.C. §1103(c)(1) (plan assets "shall be held for

the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan").

17.     "[T]he duty to conduct an independent investigation into the merits of a particular investment" is "the most basic of ERISA's investment fiduciary duties." *In re Unisys Savings Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996); *Katsaros v. Cody*, 744 F.2d 270, 279 (2nd Cir. 1984) (fiduciaries must use "the appropriate methods to investigate the merits" of plan investments). Fiduciaries must "initially determine, and continue to monitor, the prudence of each investment option available to plan participants." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007); (emphasis original); *see also* 29 C.F.R. § 2550.404a-1; DOL Adv. Opinion 98-04A; DOL Adv. Opinion 88-16A. Thus, a defined contribution plan fiduciary cannot "insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them." *Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009). Fiduciaries have "a continuing duty to monitor investments and remove imprudent ones[.]" *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015).

18.     29 U.S.C. § 1132(a)(2) authorizes plan participants to bring a civil action for appropriate relief under 29 U.S.C. § 1109.

**THE PLAN**

19.     Greystar offers a 401(k) pension benefit Plan to its full-time employees. In 2017, the Greystar Plan was one of 12 plans that submitted financial information and other forms to the federal government with a participant range of more than 10,000.

20.      In 2017, the Greystar Plan was one of 44 plans that submitted financial information and other forms to the federal government with a participant range of between $100 million to $250 million.

21.      These are the best comparators by which to analyze the performance of Greystar's Plan in relation to its peers.

22.      Here is a comparison of the Greystar Plan's fees calculated as cost per 401(k) plan participant/beneficiary *and* as a percentage of the total Plan's assets (the figures relating to the Greystar Plan are highlighted in yellow and the average figures of the comparator plans between 2013 and 2017 are highlighted in green):

**Greystar Plan Benchmarked Against Other Plans
With Participant Count Range of Greater Than 10,000 As Fee Cost Per
Participant And Percentage Of Total Plan Assets**

### 2017 – 12 Plans (including Greystar)

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage 1.61% | Asset Percentage .58% | Asset Percentage .30% | Asset Percentage .39% |
| Cost Per Head $195.88 | Cost Per Head $70.41 | Cost Per Head $36.66 | Cost Per Head $47.35 |

### 2016 – 12 Plans (including Greystar)

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage 1.78% | Asset Percentage .58% | Asset Percentage .30% | Asset Percentage .39% |
| Cost Per Head $181.79 | Cost Per Head $59.05 | Cost Per Head $30.74 | Cost Per Head $39.70 |

### 2015 – 12 Plans (including Greystar)

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| Asset Percentage 1.72% | Asset Percentage .58% | Asset Percentage .30% | Asset Percentage .39% |
| Cost Per Head $160.77 | Cost Per Head $54.33 | Cost Per Head $28.29 | Cost Per Head $36.53 |

**2014 – 10 Plans (including Greystar) with range between 5,000-9,000**

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** <mark>.96%</mark> | **Asset Percentage** .54% | **Asset Percentage** .41% | **Asset Percentage** .37% |
| **Cost Per Head** $55.82 | **Cost Per Head** $31.25 | **Cost Per Head** $24.04 | **Cost Per Head** $21.71 |

**2013 – 10 Plans (including Greystar) with range between 5,000-9,000**

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** <mark>.98%</mark> | **Asset Percentage** .54% | **Asset Percentage** .41% | **Asset Percentage** .37% |
| **Cost Per Head** $71.86 | **Cost Per Head** $39.63 | **Cost Per Head** $30.48 | **Cost Per Head** $27.52 |

**Greystar Plan Benchmarked Against Other Plans
With Asset Range of $100 Million To $250 Million Participant As Fee Cost Per
Percentage Of Total Plan Assets**

**2017 – 44 Plans (including Greystar)**

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** <mark>1.61%</mark> | **Asset Percentage** .77 % | **Asset Percentage** .53% | **Asset Percentage** .48% |

**2016 – 44 Plans (including Greystar)**

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** <mark>1.78%</mark> | **Asset Percentage** .77% | **Asset Percentage** .53% | **Asset Percentage** .48% |

**2015 – 44 Plans (including Greystar)**

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** <mark>1.72%</mark> | **Asset Percentage** .77% | **Asset Percentage** .53 % | **Asset Percentage** .48% |

**2014 – 95 Plans (including Greystar) with asset range $50 million-$100 million**

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** <mark>.96%</mark> | **Asset Percentage** .94% | **Asset Percentage** .57% | **Asset Percentage** .61% |

**2013 – 175 Plans (including Greystar) with asset range $25 million-$50 million**

| *Greystar* | *90th % Comp.* | *50th % Comp.* | *Mean Comp.* |
|---|---|---|---|
| **Asset Percentage** .98% | **Asset Percentage** 1.04% | **Asset Percentage** .68% | **Asset Percentage** .70% |

23.     The total difference from 2013 to 2017 between Greystar's fees and the average of its comparators based on total number of participants is **$6,271,595.**

24.     The total difference from 2013 to 2017 between Greystar's fees and the average of its comparators based on plan asset size is **$5,602,275.**

25.     Plaintiff had no knowledge of how the fees charged to and paid by Greystar Plan participants compared to any of Greystar's comparators.

26.     The Greystar Plan's fees were also excessive when compared with other comparable mutual funds not offered by the Plan.

30.     The charges that follow are expressed as a percentage of assets under management, or "expense ratio." For example, if the mutual fund deducts 1% of fund assets each year in fees, the fund's expense ratio would be 1%, or 100 basis points (or bps).( One basis point is equal to 1/100th of one percent (or 0.01%).The fees deducted from a mutual fund's assets reduce the value of the shares owned by fund investors.

31.     As of December 31, 2017, the fees for the investment options then in the Plan were up to three times more expensive than available alternatives in the same investment style.

32.     The mutual fund options that were in the Plan in previous years but removed before December 31, 2017 also had excessive fees compared to comparable

funds available to 401(k) plans:

| Plan Fund | Plan Fee | Identical lower-cost fund | Identical lower-cost fund fee | Plan's Excess (%) |
|---|---|---|---|---|
| Columbia Balanced A (CBLAX) | 95 bps | Columbia Balanced Inst (CBALX) | 70 bps | 36% |
| Loomis Sayles Global Allocation A (LGMAX) | 116 bps | Loomis Sayles Global Allocation Y (LSWWX) | 91 bps | 27% |
| AIG ESG Dividend A (EDFAX) | 125 bps | AIG Dividend W (EDFWX) | 105 bps | 19% |
| Columbia Dividend A (LBSAX) | 96 bps | Columbia Dividend Income Inst. (GSFTX) | 72 bps | 33% |
| iShares S&P 500 Index Institutional (BSPIX) | 11 bps | iShares S&P 500 Index Inst. (WFSPX) | 4 bps | 175% |
| Oakmark Service (OARMX) | 113 bps | Oarmark Investor (OAKMX) | 85 bps | 33% |
| ClearBridge Large Cap Growth A (SBLGX) | 104 bps | Brown Advisory Sustainable Growth I (BAFWX) | 73 bps | 43% |
| American Century Mid Cap Value A (ACLAX) | 123 bps | American Century Mid Cap Value Inv (ACMVX) | 98 bps | 26% |
| Columbia Mid Cap Index A (NTIAX) | 45 bps | Northern Mid Cap Index (NOMIX) | 15 bps | 200% |
| First Eagle Fund of America A (FEFAX) | 132 bps | Fidelity Advisors Mid Cap II I (FIIMX) | 75 bps | 76% |
| Eaton Vance Atlanta Capital SMID-Cap A (EAASX) | 116 bps | Eaton Vance Atlanta Capital SMID-Cap I (EISMX) | 91 bps | 28% |

| | | | |
|---|---|---|---|
| Delaware Small Cap Value Instl. (DEVIX) | 90 bps | AB Discovery Value Advisor (ABYSX) | 85 bps | 6% |
| Victory Integrity Small-Cap Value A (VSCVX) | 150 bps | VY Columbia Small Cap Value II I (ICISX) | 86 bps | 74% |
| Columbia Small Cap Index A (NMSAX) | 45 bps | Columbia Small Cap Index Inst. (NMSCX) | 20 bps | 125% |
| Hartford Small Cap Growth R4 (HSLSX) | 115 bps | Hartford Small Cap Growth HLS IA (HISCX) | 64 bps | 80% |
| Calamos Global Equity A (CAGEX) | 140 bps | Vanguard Global Equity Fund Investor Shares (VHGEX) | 48 bps | 192% |
| Janus Henderson Global Equity Income I (HFQIX) | 76 bps | Vanguard International Value Fund Investor Shares (VTRIX) | 38 bps | 100% |
| iShares MSCI EAFE Intl. Idx. Inv. A (MDIIX) | 36 bps | iShares MSCI EAFE Intl Ind I (MAIIX) | 9 bps | 300% |
| Oppenheimer Intl. Growth A (OIGAX) | 110 bps | Fidelity International Discovery (FIGRX) | 88 bps | 25% |
| PNC Intl. Equity A (PMIEX) | 127 bps | PNC International Equity (PIUIX) | 95 bps | 34% |
| Aberdeen Intl. Small Cp A (WVCCX) | 148 bps | T. Rowe Price International Discovery Fund (PRIDX) | 120 bps | 23% |
| Aberdeen Emerging Markets A (GEGAX) | 159 bps | Aberdeen Emerging Markets Inst. (ABEMX) | 110 bps | 45% |
| Ivy Science and Technology Y (WSTYX) | 121 bps | Janus Henderson Global Technology Fund Class I (JATIX) | 75 bps | 61% |

| Lord Abbett Short Duration Income A (LALDX) | 59 bps | DoubleLine Low Duration Bond (DBLSX) | 43 bps | 37% |
|---|---|---|---|---|
| Loomis Sayles Core Plus Bond A (NEFRX) | 73 bps | Fidelity Total Bond Fund (FTBFX) | 45 bps | 62% |
| Nuveen Inflation Protected Securities A (FAIPX) | 78 bps | Nuveen Inflation Protected Securities I (FYIPX) | 53 bps | 47% |
| Ivy High Income I (IVHIX) | 72 bps | TCW High Yield Bond Fund Class Institutional (TGHYX) | 55 bps | 31% |
| Pioneer Strategic Income A (PSRAX) | 103 bps | T. Rowe Price Spectrum Income (RPSIX) | 65 bps | 58% |
| Eaton Vance Floating-Rate and Hi Inc A (EVFHX) | 101 bps | T. Rowe Price Inst. Floating Rate Fund Class F (PFFRX) | 69 bps | 46% |
| Delaware Extended Duration Bond A (DEEAX) | 82 bps | Delaware Extended Duration Bond Inst. (DEEIX) | 57 bps | 44% |
| TCW Emerging Markets Income N (TGINX) | 116 bps | TCW Emerging Markets Income I (TGEIX) | 86 bps | 35% |

33.     By selecting and retaining the Plan's excessive cost investments while failing to adequately investigate the use of superior lower-cost mutual funds from other fund companies that were readily available to the Plan or foregoing those alternatives without any prudent reason for doing so, Greystar caused Plan participants to lose millions of dollars of their retirement savings through excessive fees.

## THE OVERCHARGES BREACHED
## DEFENDANTS' FIDUCIARY OBLIGATIONS TO THE PLAN

34.     The administrative fees of the investment offerings were paid for by the Plan participants. Greystar, as a fiduciary, was responsible for ensuring that these administrative fees were reasonable.

35.     A plan's fiduciaries have control over defined contribution plan expenses. The fiduciaries have exclusive control over the menu of investment options to which participants may direct the assets in their accounts. Those selections each have their own fees, which are deducted from the returns that participants receive on their investments.

36.     At retirement, employees' benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses. Accordingly, excessive fees can impair the value of a participant's account. Over time, even small differences in fees and performance can result in vast differences in the amount of savings available at retirement.

37.     Prudent fiduciaries exercising control over administration of a plan and the selection and monitoring of designated investment alternatives will minimize plan expenses by hiring low-cost service providers and by curating a menu of low-cost investment options. *See* Restatement (Third) of Trusts § 90 cmt. b ("[C]ost-conscious management is fundamental to prudence in the investment function. . . .").

38.     The Supreme Court has noted that the legal construction of an ERISA fiduciary's duties is "derived from the common law of trusts." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). Therefore, "[i]n determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Id.* In fact, the duty of prudence imposed under 29 U.S.C. § 1104(a)(1)(B) is a codification of the common law prudent investor rule found in trust law. *Buccino v. Continental Assur. Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983).

39.     Given the significant variation in total plan fees attributable to plan size, the reasonableness of administrative expenses and investment management expenses should be determined by comparison to other similarly-sized plans. *See* 29 U.S.C. § 1104(a)(1)(B) (requiring ERISA fiduciaries to discharge their duties in the manner "that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character").

40.     A fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants. A plan fiduciary cannot assume that an investment that began as a prudent one will remain so, particularly when the original circumstances change or the investment reveals itself to be deficient. An ERISA fiduciary's investment decisions also must account for changed circumstances and a trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.

41.     As illustrated above, Greystar Plan's administrative fees are the highest among its comparator peers consistently, regardless whether the comparison is based on a cost per participant or a percentage of assets.

42.     The funds chosen by Greystar from which Plan participants may elect to invest are "actively managed," which in significant measure results in the higher administrative fees. Greystar could have chosen passively managed funds to offer even as an alternative to Plan participants. These passively managed funds would have resulted in significantly lower administrative fees yet generated comparable returns.

43.     As understood in the investment community, passively managed investment options should either be used or, at a minimum, thoroughly analyzed and considered in efficient markets such as large capitalization U.S. stocks. This is because it is difficult and either unheard of, or extremely unlikely, to find actively managed mutual funds that outperform a passive index, net of fees, particularly on a consistent basis.

44.     Nobel Prize winners in economics have concluded that virtually no investment manager consistently beats the market over time after fees are considered. "Properly measured, the average actively managed dollar must underperform the average passively managed dollar, net of costs." William F. Sharpe, The Arithmetic of Active Management, 47 FIN. ANALYSTS J. 7, 8 (Jan./Feb. 1991); Eugene F. Fama & Kenneth R. French, Luck Versus Skill in the Cross- Section of Mutual Fund Returns, 65 J. FIN. 1915, 1915 (2010) ("After costs . . . in terms of net returns to investors, active investment must be a negative sum game.").

45.     To the extent fund managers show any sustainable ability to beat the market, the outperformance is nearly always dwarfed by mutual fund expenses. Fama & French, Luck Versus Skill in the Cross-Section of Mutual Fund Returns, at 1931–34; *see also* Russ Wermers, Mutual Fund Performance: An Empirical Decomposition into Stock-Picking Talent, Style, Transaction Costs, and Expenses, 55 J. FIN. 1655, 1690 (2000) ("on a net-return level, the funds underperform broad market indexes by one percent per year").

46.     Accordingly, investment fees are of paramount importance to prudent investment selection, and a prudent investor will not select higher-cost actively managed funds unless there has been a documented process leading to the realistic conclusion that the fund is likely to be that extremely rare exception, if one even exists, that will outperform its benchmark over time, net of investment expenses.

47.     Prudent fiduciaries of large defined contribution plans must conduct an analysis to determine whether actively managed funds, particularly large cap, will outperform their benchmark net of fees. Prudent fiduciaries then make a reasoned decision as to whether it is in participants' best interest to offer an actively managed large cap option for the particular investment style and asset class, in light of the higher fees of active management.

48.     Prudent fiduciaries of defined contribution plans continuously monitor the investment performance of plan options against applicable benchmarks and peer groups to identify underperforming investments. Based on this process, prudent

fiduciaries replace those imprudent investments with better-performing and reasonably priced options.

49.     Greystar's decision-making, monitoring and soliciting bids from investment funds was deficient in that it resulted in almost no passively-managed funds options for Plan participants, resulting in inappropriately high administrative Plan fees.

## CLASS ACTION ALLEGATIONS

50.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

51.     In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representative of, the following Class:

*All participants and beneficiaries of the Greystar 401(k) Plan from June 1, 2013 through the date of judgment, excluding the defendant or any participant who is a fiduciary to the Plan.*

52.     The Class includes more than 14,991 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

53.     There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Greystar owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged as the Plan and not as to any individual participant. Common questions of law and fact include but are not limited to the following:

17

- Who are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether the fiduciaries of the Plan breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Greystar's breach of duty.

54.    Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all participants in the Plan were harmed by Greystar's misconduct.

55.    Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because she was a participant in the Plan during the Class period, has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

56.    Pursuant to Federal Rule of Civil Procedure 23(b)(1), prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants concerning their discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a) and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who

are not parties to the adjudication, or (3) would substantially impair those participants'
and beneficiaries' ability to protect their interests.

57.     Certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because
Greystar has acted or refused to act on grounds that apply generally to the Class, so that
final injunctive relief or corresponding declaratory relief is appropriate respecting the
class as a whole.

58.     A class action is the superior method for fair and efficient adjudication of
this controversy because joinder of all participants and beneficiaries is impracticable,
the losses suffered by individual participants and beneficiaries may be small and
impracticable for individual members to enforce their rights through individual actions,
and the common questions of law and fact predominate over individual questions.
Given the nature of the allegations, no class member has an interest in individually
controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely
to be encountered in the management of this matter as a class action. Alternatively,
then, this action may be certified as a class under Federal Rule of Civil Procedure
23(b)(3), if it is not certified under Federal Rule of Civil Procedure 23(b)(1).

59.     Plaintiff's attorneys are experienced in complex commercial and class
litigation and will adequately represent the Class.

## LEGAL CLAIMS
### Count 1 – Breach of Duties of Loyalty and Prudence
### 29 U.S.C. § 1104(a)(1)(A)–(B), (D)

60.     Plaintiff restates the above allegations as if fully set forth.

61.     Greystar is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1). Greystar is responsible for selecting prudent investment options, ensuring that those options charge only reasonable fees, and taking any other necessary steps to ensure that the Plan's assets are invested prudently. Greystar had a continuing duty to evaluate and monitor the Plan's investments on an ongoing basis and to "remove imprudent ones" regardless of how long a fund has been in the plan. *Tibble v. Edison,* 135 S. Ct. 1823, 1829 (2015).

62.     29 U.S.C. § 1104 imposes fiduciary duties of prudence and loyalty upon Greystar in its administration of the Plan. The scope of the fiduciary duties and responsibilities of Greystar includes managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries, defraying reasonable expenses of administering the Plan, and acting with the care, skill, diligence, and prudence required by ERISA. These duties further required Greystar to independently assess whether each option was a prudent choice for the Plan.  *DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 423 (4th Cir. 2007); *see Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 590, 595–96 (8th Cir. 2009).

63.     Greystar was directly responsible for ensuring that the Plan's fees were reasonable, selecting investment options in a prudent fashion in the best interest of Plan participants, prudently evaluating and monitoring the Plan's investments on an ongoing basis and eliminating funds that did not serve the best interest of Plan participants, and taking all necessary steps to ensure that the Plan's assets were invested prudently and appropriately.

20

64.     Greystar failed to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's investments and fees in comparison to other investment options. Greystar selected and retained for years as Plan investment options mutual funds with high expenses relative to other investment options that were readily available to the Plan at all relevant times.

65.     Greystar failed to engage in a prudent process for monitoring the Plan's investments and removing imprudent ones within a reasonable period. This resulted in the Plan continuing to offer excessively expensive funds compared to equivalent and/or comparable low-cost alternatives that were available to the Plan.

66.     Thus, Greystar failed to make Plan investment decisions based solely on the merits of each investment and in the best interest of Plan participants; failed to ensure the Plan was invested in the lowest-cost investment vehicles. Through these actions and omissions, Greystar failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of its fiduciary duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

67.     Greystar failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

21

68.     Greystar is liable under 29 U.S.C. §§ 1109(a) and 1132(a)(2) to make good to the Plan the losses resulting from the breaches, to restore to the Plan any profits Greystar made through the use of Plan assets, and to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count. In addition, Greystar is subject to other equitable relief pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(3).

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

**WHEREFORE**, Plaintiff, on behalf of the Plan and all similarly situated participants and beneficiaries of the Plan, request the following:

- A declaration that Greystar breached its fiduciary duties as described above;

- An order that requires Greystar to make good to the Plan all losses resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

- Order an accounting to determine the amounts that Greystar must make good to the Plan;

- Remove the fiduciaries who have breached their fiduciary duties;

- Certify the Class, appointing each of the named Plaintiffs as a class representative and appoint undersigned counsel as Class Counsel;

- Awarding to Plaintiffs and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

- Award interest to the extent it is allowed by law; and

- Grant all other equitable and/or remedial relief the Court deems appropriate.

DATED:  May 13, 2019

**THE LANIER LAW FIRM, P.C.**

*/s/ W. Mark Lanier*
W. Mark Lanier
State Bar No. 11934600
wml@lanierlawfirm.com
Alex J. Brown
State Bar No. 24026964
alex.brown@lanierlawfirm.com
Jonathan P. Wilkerson
State Bar No. 24050162
jonathan.wilkerson@lanierlawfirm.com
10940 W. Sam Houston Pkwy N, Suite 100
Houston, TX 77064
Telephone:  713-659-5200
Facsimile:   713-659-2204

**GREG COLEMAN LAW**
Greg F. Coleman (*pro hac vice* to be filed)
greg@gregcolemanlaw.com
800 South Gay Street
Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

**JORDAN LEWIS, P.A.**
Jordan Lewis (*pro hac vice* to be filed)
jordan@jml-lawfirm.com
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of this Class Action Complaint for Claims Under 29 U.S.C. § 1132(a)(2) has been forwarded to the following by Certified Mail, Return Receipt Requested on the 13th day of May, 2019:

Alexander Acosta
U.S. Secretary of Labor
Department of Labor
200 Constitution Ave. NW
Washington, DC  20210

Steven Mnuchin
U.S. Secretary of the Treasury
Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, DC  20220

*/s/ W. Mark Lanier*
W. Mark  Lanier